**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Jason M. Hanania,

               Plaintiff,

v.

United States of America,

               Defendant.

No. CV-20-02025-PHX-JJT

**ORDER**

At issue is Defendant United States' Motion to Dismiss (Doc. 14, Mot.) to which Plaintiff Jason M. Hanania filed a Response (Doc. 17, Resp.) and the United States filed a Reply (Doc. 21, Reply).

**I.      BACKGROUND**

    **A.      FBI Employment**

In his Complaint (Doc. 1, Compl.), Plaintiff alleges as follows. In August 2004, Plaintiff began working an intelligence analyst at the FBI Phoenix field office. (Compl. ¶ 7.) He was recruited as a counterterrorism agent three months later. (Compl. ¶ 8.) In October 2005, after completing FBI New Agent Training in Quantico, Plaintiff transferred to Honolulu, Hawaii, where he was assigned to the FBI Honolulu drug squad despite being recruited as a counterterrorism agent. (Compl. ¶ 9.)

Plaintiff makes a number of allegations regarding poor communication, "leadership failures," and "mismanagement" in the Honolulu drug squad. (Compl. ¶¶ 14, 16, 18.) For example, Plaintiff alleges that his training agent instructed him to "[s]how [his] face by 10:00

a.m. each morning;" "do whatever [he] want[ed], but make sure [his] phone [wa]s always on;" tell anyone who asked he was "driving around learning the streets of Hawaii;" and "turn in one sheet of paper each day" if he "wanted to look like [he was] doing work." (Compl. ¶ 10.) Additionally, Plaintiff alleges that he was sexually harassed at the December 2005 FBI Honolulu Christmas party, when Special Agent in Charge Charles Goodwin offered Plaintiff the hotel room key of Assistant Special Agent in Charge Pamela McCullough. (Compl. ¶ 13.) Further, a senior officer allegedly told Plaintiff that FBI Honolulu had more agents assigned to the drug squad than the counterterrorism squad because "FBI superiors get cash kickbacks based on asset forfeiture, and that drug squads produce far more asset forfeiture than counterterrorism squads." (Compl. ¶ 15.) Plaintiff alleges he was sent as a new agent to interview an inmate at a local prison alone, in violation of FBI guidelines, and the FBI never reimbursed his relocation expenses. (Compl. ¶¶ 16-17.)

Plaintiff alleges that in February 2006, he made protected whistleblower disclosures under 5 U.S.C. § 2303 to Goodwin, with a senior agent from the white-collar crimes squad acting as an intermediary. (Compl. ¶¶ 18–19.) Specifically, he communicated that he had seen his supervisor only four times in four months (allegedly indicating time and attendance fraud), that the drug squad had no meetings (allegedly indicating mismanagement), and that he did not know what he was supposed to be doing (allegedly indicating lack of vigilant oversight and direction). (Compl. ¶ 18.) He further claims that the intermediary arranged a meeting with Goodwin, but Goodwin did not attend. (Compl. ¶ 19.) Instead, Plaintiff and the intermediary met with Assistant Special Agent in Charge Casey, who allegedly agreed to transfer Plaintiff back to his previous position as an analyst in Phoenix. (Compl. ¶¶ 19–20.)

Plaintiff claims that four weeks after the alleged whistleblowing, Casey threatened him with a criminal investigation for time and attendance fraud if he did not sign a resignation letter. (Compl. ¶ 23.)  Plaintiff, feeling "overpowered," signed the letter and shortly thereafter left Hawaii. (Compl. ¶¶ 23–24.) Allegedly, the FBI never provided him with an employment evaluation or notice that he was at risk of being fired. (Comp. ¶ 25.)

1    **B.     Prior Administrative Action**

2    Plaintiff states that after leaving FBI employment, he filed a Reprisal Notice with

3    the Department of Justice Office of the Inspector General (OIG) pursuant to 5 U.S.C.

4    § 2303. (Compl. ¶ 29.) He attached the OIG's April 20, 2009 response letter to his

5    complaint. (Compl. ¶ 29; Ex. A.) In this letter, OIG concluded that Plaintiff "had not

6    alleged that he made a protected disclosure to a qualifying official," because he alleged

7    that he made complaints to a fellow agent rather than to an official designated under the

8    regulation. (Compl. Ex. A.)

9    In August 2018, Plaintiff filed another reprisal notice under an amended 5 U.S.C.

10   § 2303. (Compl. ¶ 31; Ex. B.) OIG's August 20, 2018 response indicated that Plaintiff had

11   not "made a cognizable claim of reprisal under section 2303." (Compl. Ex. B.) OIG

12   declined to open an investigation and advised Plaintiff that he could present a request for

13   corrective action to the Director of the Department of Justice Office of Attorney

14   Recruitment and Management (OARM) within 60 days. (Compl. Ex. B.) Plaintiff appealed

15   to OARM. (Compl. ¶ 31.) He claimed that OARM ordered the FBI to respond to the reprisal

16   notice. (Compl. ¶ 31.) In response, the FBI stated that Plaintiff had resigned and supported

17   this contention with the resignation letter, a FD-193 "Report of Exit and Separation," and

18   a SF-52 "Request for Personnel Action." (Compl. ¶ 32.) Plaintiff claims the FD-193 and

19   SF-52 were forged. (Compl. ¶ 32.) OARM ultimately found that it lacked jurisdiction

20   because the complaints were not protected whistleblower disclosures. (Mot. at 5; Ex. 4,

21   at 11.) Plaintiff appealed to the Deputy Attorney General, and the Deputy Attorney

22   General's Office affirmed OARM's decision on April 20, 2020 (Mot. at 5; Ex. 5, at 2.)

23   Plaintiff claims that on July 13, 2020, he mailed an administrative claim notice

24   regarding his current claim. (Resp. at 7; Ex. A.) He maintains that he never received a

25   response. (Resp. at 7.) However, the government asserts that the FBI could not locate a

26   record of this claim. (Reply at 4.)

27   . . . .

28   . . . .

- 3 -

### C.     Procedural History

On October 21, 2020, Plaintiff filed the Complaint bringing a negligence claim pursuant to the Federal Tort Claims Act (FTCA). (Compl. ¶ 1.) He bases this negligence claim on the government's alleged breach of its duty to protect national security whistleblowers from retaliation under 5 U.S.C. § 2303. (Compl. ¶ 36.)

On April 2, 2021, the government brought a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), arguing that (1) 5 U.S.C. § 2303 does not provide for federal judicial review of FBI employee whistleblower reprisal claims, (2) the FTCA does not waive the United States' sovereign immunity for torts arising under federal rather than state law, and (3) Plaintiff has failed to exhaust his administrative remedies under the FTCA because he never raised an administrative tort claim to the FBI prior to filing suit. (Mot. at 2.)

## II.     LEGAL STANDARD

### A.     Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

"[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine whether subject-matter jurisdiction

1  exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546

2  U.S. 500, 514 (2006).

3        **B.**    **Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)**

4       When analyzing a complaint for failure to state a claim for relief under Federal Rule

5  of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and

6  construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d

7  1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief

8  that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal

9  conclusions couched as factual allegations are not entitled to the assumption of truth,

10  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a

11  motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108

12  (9th Cir. 2010).

13       A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either

14  (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable

15  legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While

16  a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a

17  plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

18  than labels and conclusions, and a formulaic recitation of the elements of a cause of action

19  will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must contain

20  "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

21  face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded

22  complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

23  improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556

24  (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

25  **III.**    **ANALYSIS**

26        **A.**    **Exhaustion of Administrative Remedies Under the FTCA**

27       The government contends that the Court lacks subject matter jurisdiction over the

28  Complaint because Plaintiff failed to exhaust his administrative remedies under the FTCA.

1    (Mot. at 11.) The Court agrees. Plaintiff has not shown that he properly raised an

2    administrative claim prior to filing this action.

3          This Court has subject matter jurisdiction over a FTCA action only after the plaintiff

4    has "first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a); *see*

5    *also Blair v. IRS*, 304 F.3d 861, 863–64 (9th Cir. 2002). To satisfy this requirement, a tort

6    claimant is required to "file (1) a written statement sufficiently describing the injury to

7    enable the agency to begin its own investigation, and (2) a sum certain damages claim"

8    within two years of accrual of the claim. *Warren v. U.S. Dep't of Interior Bureau of Land*

9    *Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984); 28 U.S.C. § 2401(b). "The plaintiff is permitted

10   to sue the United States only after the claim is denied or six months have elapsed without

11   final disposition by the agency." *Warren*, 724 F.2d at 778.

12         A claim is considered "presented" to an agency when the agency receives written

13   notification of the incident. *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1251 (9th Cir. 2006);

14   28 C.F.R. § 14.2(a). In *Vacek*, although the plaintiff's attorney maintained that he mailed

15   the claim within the two-year window, the agency denied it had received the form. 447

16   F.3d at 1249. The plaintiff's attorney did not send the form by certified mail or take other

17   action to ensure that the agency received the claim. *Id.* at 1252. Because "waivers of

18   sovereign immunity must be interpreted strictly," the Court upheld a dismissal for lack of

19   subject matter jurisdiction. *Id.* at 1252–53. Similarly, in *Bailey v. United States*, the Court

20   held that dismissal for lack of subject matter jurisdiction was appropriate when the

21   plaintiff's attorney claimed he mailed the administrative claim, but evidence indicated that

22   the Air Force never received it. 642 F.2d 344, 346–47 (9th Cir. 1981). Again, the plaintiff's

23   counsel failed to use certified or registered mail, which the Court pointed out was a "well

24   known and easy way to establish receipt of the claim," or to follow up as to whether the

25   agency had received the administrative claim. *Id.* at 347.

26         The parties here dispute whether Plaintiff has met the claim presentment

27   requirement. As the government points out, the April 2020 denial of Plaintiff's

28   whistleblower reprisal claim does not exhaust his administrative remedies for the current

FTCA claim. (Mot. at 12.) However, Plaintiff contends that he mailed an administrative claim notice for his FTCA claim on July 13, 2020, within two years of when his claim accrued. (Resp. at 7; Ex. 1.) While Plaintiff attached the purported administrative claim to his response, he does not provide proof that the government received the letter. Further, the government provides the declaration of the Section Chief of the FBI's Discovery Unit, indicating she could not locate any record of an administrative claim under the FTCA filed by Plaintiff or on his behalf. (Reply at 4; Ex. 1, at 2–3.)

Assuming that the claim accrued on October 30, 2018,[1] then Plaintiff was required to file an administrative claim within two years of that date—before October 30, 2020. However, like the plaintiffs in *Vacek* and *Bailey*, Plaintiff here provides no certified mail receipt or other evidence that the government received its administrative claim. Therefore, Plaintiff has not carried his burden to show he exhausted his administrative remedies, and as a result he has not carried his burden to show that there is subject matter jurisdiction.

## B.    Waiver of Sovereign Immunity

The government additionally argues that the Court lacks subject matter jurisdiction because the FTCA does not waive the United States' sovereign immunity for torts arising under federal rather than state law. (Mot. at 9–10.) The United States is amenable to suit only insofar as it has waived its sovereign immunity. *Conrad v. United States*, 447 F.3d 760, 764 (9th Cir. 2006). The FTCA does so "for a discrete class of lawsuits." *O'Toole v. United States*, 295 F.3d 1029, 1033 (9th Cir. 2002). Namely, it waives sovereign immunity

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 ("The United States shall be liable . . . relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."). Thus, the FTCA encompasses only those claims which

---

[1] Plaintiff states that he discovered new evidence on October 30, 2018 and proceeds as if it is when his claim accrued. (Resp. at 7.)

possess a private analogue. *Casillas v. United States*, 2009 WL 735193, at \*10 (D. Ariz. Feb. 11, 2009). The law does not demand a case "exactly on point" to meet this requirement; "an appropriate analogy" will suffice. *Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir. 2013).

Rather than identifying a private party analogue, Plaintiff points to general negligence principles and argues that a federal statute like 5 U.S.C. § 2303 can provide the standard of reasonable care in exercising a state law duty for a negligence claim, citing *United Scottish Insurance Co. v. United States*, 614 F.2d 188 (9th Cir. 1979) and *Blessing v. United States*, 447 F. Supp. 1160 (E.D. Pa. 1978). (Resp. at 6.) However, in *United Scottish Insurance Co.*, the Ninth Circuit held that when a federal statutory duty is the reason for undertaking the action, breach of this duty does not automatically create liability. 614 F.2d at 193. Rather, the existence of a duty depends on state law. *Id.* at 194. Similarly, *Blessing* involved an FTCA claim for negligent inspection of a workplace premised not on federal statute, but on state tort law principles. 447 F. Supp. at 1166. Thus, Plaintiff's reliance on *United Scottish Insurance Co.*, and *Blessing* is misplaced. "The breach of a duty created by federal law is not, by itself, actionable under the FTCA." *Love v. United States*, 60 F.3d 642, 644 (9th Cir. 1995).

Plaintiff does not identify a state law applicable here and the Court has not been able to identify such a state law duty. Therefore, the Court finds that it also lacks subject matter jurisdiction because the FTCA does not waive sovereign immunity for torts arising under federal law.

The Court need not reach the government's argument that it lacks subject matter jurisdiction because 5 U.S.C. § 2303 is not subject to judicial review, and it need not address whether Plaintiff has failed to state a claim under Rule 12(b)(6), because it can resolve this matter on other grounds.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 14).

1   **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and
2   close this case.

3   Dated this 27th day of October, 2021.

Honorable John J. Tuchi
United States District Judge